UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------- x
ANDREW COOK,                                              :
                                                         :
                        Plaintiff,                        :
                                                         :
        v.                                               :        25-CV-1029 (SFR)
                                                         :
RICHARD WILLIAMS, *et al*,                               :
                                                         :
                        Defendants.                       :
-------------------------------------------------------------- x

**INITIAL REVIEW ORDER**

Plaintiff Andrew Cook, an individual serving a sentence in the custody of the

Connecticut Department of Correction ("DOC"),[1] brings a civil rights action *pro se* under 42

U.S.C. § 1983 against ten defendants: Richard Williams, M.D., at Cheshire Correctional

Institution ("Cheshire"); Carin Vangelder, M.D., at Bridgeport Correctional Center ("BCC");

Frank Maletz, M.D./Orthopedist whom Cook says works at all Department of Correction

("DOC") correctional facilities; Douglas Gibson, M.D, at UConn Medical Farmington; UConn

Medical Farmington; Regional Chief Operating Officer Nicole Hernandez; Gloria Perry,

D.M.D., at Cheshire; Robert Martin, the former Warden of Corrigan Correctional Center;

Warden Reis, the Warden at Cheshire; and Schedulers Jane/John Doe at Cheshire and UConn

Medical. Cook's Complaint suggests Fourteenth and Eighth Amendment claims for deliberate

indifference to his treatment needs for several physical conditions; his dental health; and his

---

[1] I may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d
161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search
function shows that Cook was sentenced on June 18, 2024, and is now housed at Osborn
Correctional Institution.

need for a single cell. Cook sues Defendants in their individual and official capacities and seeks damages and injunctive relief.

The Prison Litigation Reform Act requires that I conduct an initial review of this complaint because Cook is an incarcerated plaintiff who seeks relief from government employees. 28 U.S.C. § 1915A(a). I have thoroughly reviewed all factual allegations in the Complaint. For the reasons explained below, I find that Cook may proceed to service on several of the claims he has asserted in the Complaint.

## I.    BACKGROUND

I accept as true the following well-pleaded facts in the Complaint.

Cook pursues claims of medical deliberate indifference by medical staff at BCC, Cheshire and UConn Medical for failing to provide responsive treatment for his labored breathing, failed cervical fusion, and a "growing" hernia; his need for colonoscopy; and his dental health. Compl. 9, ECF No. 1. He also complains that he was denied a single cell while he was confined at Corrigan. *Id.*

Cook provides the following allegations about each defendant.

### A.    Dr. Williams

Dr. Williams was Cook's medical provider at Cheshire commencing in 2023. Compl. 6. Cook says that Dr. Williams failed to provide him necessary medical treatment. *Id.*

After Dr. Williams quarantined Cook from February 16 to February 25, 2024, Cook was left in his cell for more than ten days. *Id.* Cook continually advised the medication nurses that he could not breathe and his inhalers were not working and that the Prednisone was "not doing anything." *Id.* He states: "This caused physical damage!" *Id.*

Cook says that his attached administrative remedies show the extent of his injuries due to extreme neglect and delays, especially in providing him with proper treatment, diagnostic tests, and referrals to specialists for a colonoscopy, hernia issues, lung damage, and dental needs. *Id.*

### B.    Dr. Vangelder

Dr. Vangelder was Cook's doctor while he was at the BCC infirmary from March 15, 2024 to April 1, 2024. *Id.* at 7. Dr. Vangelder discharged Cook back to the general population despite Cook expressing that his breathing was "still not right." *Id.* Dr. Vangelder noted in her discharge notes that Cook was not "feeling well." *Id.* Cook states that he still suffers from ongoing damage to his lungs. *Id.* He complains that prior to his February 2024 illness, he was housed in a cell at Cheshire that had black mold. *Id.* He maintains that influenza does not cause MRSA lung infections and abscesses in his lungs. *Id.* He states that another inhaler is not the solution to his breathing issues. *Id.*

### C.    UConn Medical Farmington

UConn Medical in Farmington contracts with DOC for inmate medical care. UConn Medical discharged Cook from the hospital too soon, which caused damage to Cook's lungs. UConn Medical neglected to provide Cook further testing and treatment, and he suffered an "extreme delay" in receiving "crucial" diagnostics and treatment. *Id.*

Cook suffered from pneumonia from February 24, 2024 to March 15, 2024, and is suffering from having abscesses and a blood infection in his lungs (MRSA). *Id.*

Cook indicates that the Scheduler at UConn Medical delayed sixteen months in providing him with a follow-up appointment for his cervical damage. *Id.*

Cook remains in agony. *Id.*

### D.    Dr. Maletz

Cook has been treated by Cheshire's orthopedist, Dr. Maletz, since December 2022. *Id.* at 8. Although "helpful" in the past, Dr. Maletz has not acted responsively to Cook's complaints of worsening neck pain. *Id.* Cook had a cervical fusion in 2021 just before he was arrested. *Id.* Cook says that Dr. Maletz has not prescribed him sufficient pain relief for his failed cervical fusion and has refused to see him for more than sixteen months. *Id.*

Since Cook's move to Osborn, Cook has had his pain medication cut back to once a day even though he has stated that his pain is worse. *Id.*

### E.    Dr. Hernandez

Cook states that Dr. Hernandez is both an RCOO for DOC and the Medical Director for Cheshire's Medical Unit. *Id.*

After Cook wrote to Dr. Hernandez about his need for treatment, Dr. Hernandez spoke to him on April 20, 2025 about his medical issues. *Id.* Cook was not later seen by Dr. Maletz as indicated by Dr. Hernandez. *Id.*

Cook was transferred to Osborn on May 30, 2025, before he could meet with any medical providers. *Id.* Cook queries whether he was transferred "to get rid of [him]." *Id.* He alleges that he is now confined at Osborn where his health is declining but he does not have time to exhaust his administrative remedies. *Id.*

### F.    Dr. Perry

Relevant to Cheshire dentist Dr. Perry, Cook states:

Plain and simple my teeth are being neglected, basically deteriorating. They keep talking about my "plan" (dental) for partials, but against the extreme delay—Last work on teeth was 1 yr. ago in th[ei]r plan (one emergency tooth in that time) They (DOC) dental blames me for not taking care of my teeth though I brush/floss daily.

4

*Id.* Cook complains there is only one dentist at Cheshire and indicates that more should be hired to treat the Cheshire inmates. *Id.*

### G.    Dr. Gibson

Cook represents that he could find only Dr. Gibson's name in connection with his medical care for his stay at UConn Hospital from February 25, 2024 to March 15, 2024. *Id.* at 9.

Dr. Gibson made the decision to discharge Cook from UConn Medical when Cook could barely breathe. *Id.* Cook indicates that he has suffered extreme delays to his treatment—including scheduling trips to UCONN—for his hernia and colonoscopy, and that a false history of COPD was placed in his medical records. *Id.*

### H.    Warden Martin

While Warden at Corrigan, Warden Martin failed to provide Cook with a single cell and was "responsible" for Cook's continued placement in a two-man cell. *Id.*

### I.    Warden Reis

Cook contends that Cheshire Warden Reis is "ultimately responsible" for his medical care during his Cheshire confinement from March 2023 to May 2025. *Id.* Cook wrote to Warden Reis, but his communication was passed to Dr. Hernandez. *Id.*

## II.    <u>LEGAL STANDARD</u>

Pursuant to 28 U.S.C. § 1915A, courts must review civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous,

malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).[2]

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [a plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). But the court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.

---

[2] My review is limited to the federal claims raised in the Complaint. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)).

## III.    DISCUSSION

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

### A.    Initial Matters

#### 1.    Cook's Status

I note that Cook alleges facts occurring both prior to, and after, his sentencing on June 18, 2024. Cook's status dictates whether his claims of deliberate indifference are governed by the Eighth or Fourteenth Amendment. Claims brought by individuals in pretrial detention involving deliberate indifference to medical needs or unsafe conditions of confinement are considered under the Due Process Clause of the Fourteenth Amendment, but where a claim arises from instances when the plaintiff is serving a sentence of incarceration, such a claim is considered under the cruel and unusual punishment clause of the Eighth Amendment. *See*

*Darnell v. Pineiro*, 849 F.3d 17, 29-35 (2d Cir. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-18 (S.D.N.Y. 2017).

### 2.    Immunity

Cook names UConn Medical as a defendant. But UConn Medical is a state agency or entity, which is not subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989); *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *5 (D. Conn. Jan. 16, 2019) (dismissing claims UConn Medical as a state agency not subject to suit section 1983). Thus, I must dismiss as not plausible Cook's section 1983 claims against UConn Medical at Farmington. 28 U.S.C. § 1915A(b)(1).

### B.    Misjoinder and Severance

Cook sues multiple individual defendants for deliberate indifference to his medical treatment needs, his dental health, and his cell confinement.

Before determining whether Cook has alleged any plausible Fourteenth or Eighth Amendment claims, I first consider whether Cook has properly joined his claims against the individual defendants named in this action under Federal Rule of Civil Procedure 20.

"Rule 20 permits joinder of multiple defendants if 'any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences' and 'any questions of law or fact common to all defendants will arise in the action.'" *Harnage v. Lightner*, 916 F.3d 138, 142 (2d Cir. 2019) (quoting Fed. R. Civ. P. 20(a)(2)). The court may "drop a party" or "sever any claim against a party" whom it finds to be improperly joined. Fed. R. Civ. P. 21.

With respect to the first requirement of Rule 20(a), what constitutes the same "transaction" or "occurrence" is approached on a case-by-case basis. *Dixon v. Scott Fetzer Co.*,

317 F.R.D. 329, 331 (D. Conn. 2016). Whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts" of the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). The same transaction requirement "means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (citation and internal quotation marks omitted).

The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019). The mere fact that the same constitutional provisions or statutes may be at issue in two or more claims is not enough to render the claims sufficiently related for purposes of joinder; rather, where a plaintiff's claims under the same constitutional or statutory framework "arise from different circumstances and would require separate analyses," the claims are not logically related. *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012).

In deciding whether to sever a claim for misjoinder, I consider whether "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) . . . settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Costello*, 888 F. Supp. 2d at 263.

### 1.    Claims Against Different Defendants at Different Facilities

The Complaint describes several instances of deliberate indifference to Cook's physical conditions and dental health by different defendants at BCC, UConn Medical, and Cheshire.

Cook also brings a claim concerning his need for a single cell while confined at Corrigan against Warden Martin.

Judicial economy would not be facilitated by retaining these claims of deliberate indifference arising at separate facilities in a single action because these claims arise from separate transactions at different facilities and would require discovery of different sets of evidence and separate proofs at trial. Further, settlement negotiations would also be hindered by having to consider several distinct claims involving separate facts and legal theories. "Generally, district courts have concluded in similar circumstances that inclusion of such unrelated claims in one complaint constitutes improper joinder of defendants in violation of Rule 20(a)(2)." *Cora v. Gardner*, No. 3:24CV1450 (VAB), 2025 WL 744272, at *5 (D. Conn. Mar. 7, 2025); *Staton v. Quiros*, No. 3:23-CV-00494 (JAM), 2024 WL 4349075, at *2-3 (D. Conn. Sept. 30, 2024) (finding that claims arising from occurrences at two different correctional facilities were misjoined).

I therefore find that Cook's claims brought against defendants arising at different times and at different facilities are improperly joined under Rule 20 and must be severed under Rule 21. *See, e.g.*, *Ibbison v. Quiros*, No. 3:22-CV-1163 (SVN), 2023 WL 1766440, at *8 (D. Conn. Feb. 3, 2023) (concluding that plaintiff's "claims relate to different time periods, different incidents, and, for the most part, different Defendants" and thus were improperly joined under Rule 20 and had to be severed and dismissed under Rule 21).

Because the Complaint predominantly asserts claims arising from indifference to Cook's medical needs during his confinement at Cheshire, I sever as misjoined Dr. Vangelder, Warden Martin, Dr. Gibson, and UConn Medical Scheduler Doe.

### 2.    Claims Against Dr. Perry

Although I retain Cook's claims of medical indifference against Dr. Williams, Dr. Maletz, RCOO Hernandez, Warden Reis, and Cheshire Scheduler Doe, I conclude that Cook's claim of dental indifference against Dr. Perry is also misjoined and must be severed under Rule 21. This is so because any transactions and occurrences related to Cook's dental treatment do not arise from the same transaction or occurrence as his claims of indifference for his medical (non-dental) treatment needs. Again, judicial economy would not be served by retaining in this single action Cook's claims arising from such differing factual predicates. *See Brown v. Cook*, No. 3:20-CV-864 (KAD), 2020 WL 5659387, at *12 (D. Conn. Sept. 23, 2020) (severing Eighth Amendment deliberate indifference to medical treatment from action alleging Eighth Amendment deliberate indifference to dental treatment).

In sum, I sever and dismiss without prejudice from this action Cook's claims against BCC Dr. Vangelder, Corrigan Warden Martin, and UConn Medical Dr. Gibson, UConn Medical Scheduler Doe, and Cheshire Dr. Perry. If Cook wishes to proceed with his Fourteenth or Eighth Amendment claims against these defendants, Cook shall do so in separate actions.

### C.    Remaining Federal Claims

I now turn to consider whether Cook has alleged any plausible Fourteenth or Eighth Amendment claims against the remaining five Cheshire defendants: Dr. Williams, Dr. Maletz, RCOO Dr. Hernandez, Warden Reis, and Cheshire Scheduler Doe.

### 1.    Personal Involvement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (stating that "personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("[T]he plaintiff must directly plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (citation and internal quotation marks omitted).

Here, Cook has not alleged any facts in the body of his complaint about conduct by Cheshire Scheduler Doe. Absent facts to describe how Scheduler Doe acted to violate Cook's constitutional rights, Cook may not proceed on section 1983 claim against Cheshire Scheduler Doe. *See Wright*, 21 F.3d at 501. Accordingly, Cook's claims against Cheshire Scheduler Doe are dismissed from this action.

### 2.    Deliberate Medical Indifference

Cook's claims of deliberate indifference to medical needs arising prior to June 18, 2024, must be analyzed under the Fourteenth Amendment's substantive due process standards. By contrast, his deliberate indifference claims during his incarceration as a sentenced prisoner are governed by the Eighth Amendment. Where it is not clear if Cook's allegations implicate the Fourteenth or Eighth Amendment, I will consider Cook's claim of medical indifference under the more liberal standard of the Fourteenth Amendment applicable to pretrial detainees.

To prevail on either his Fourteenth or Eighth Amendment claims, Cook must allege facts to satisfy an objective and subjective prong. *See Darnell*, 849 F.3d at 30-32.

### a.    Objective Prong

To establish the objective component of a Fourteenth or Eighth Amendment violation, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Darnell*, 849 F.3d at 30 (applying Eighth Amendment objective standard

to Due Process Clause conditions-of-confinement claim); *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order) ("For Fourteenth Amendment claims, this Court applies the same standard as the Eighth Amendment to determine whether an alleged action is objectively serious enough to be a constitutional violation.").

The Second Circuit has identified several non-exhaustive factors relevant to the inquiry into the seriousness of a medical condition: "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).

If the prisoner's claim arises from an unreasonable delay in treatment or a challenge to the kind of treatment received, the seriousness inquiry focuses on the challenged delay or treatment "rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702). A sufficiently serious medical condition exists when, if left untreated, it could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (citation omitted).

I construe the Complaint to identify the following medical needs: difficulty breathing, a defective cervical fusion and related neck pain, a "growing" hernia, and a delay in receiving a colonoscopy while at Cheshire.

Cook has not alleged facts to suggest he suffers from a serious hernia condition or related pain from his hernia requiring medical treatment. Medical conditions "vary in

severity," and thus "a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." *Harrison*, 219 F.3d at 136 (internal quotation marks omitted). Courts recognize that "not every hernia rises to the level of a serious medical need." *Jenkins v. Trachtman*, No. 9:17-CV-0126 (TWD) (GSD), 2017 WL 7163935, at *3 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted sub nom.*, 2018 WL 626303 (N.D.N.Y. Jan. 30, 2018); *see also McQueen v. Cnty. of Albany*, No. 9:08-CV-799, 2010 WL 338081, at *11 (N.D.N.Y. Jan. 28, 2010) ("[A]t worst, plaintiff's hernia caused him to suffer intermittent pain and/or discomfort, which is patently insufficient to objectively prove that his condition was serious."); *Day v. Lantz*, No. 3:07-CV-388 (RNC), 2009 WL 801612, at *3 (D. Conn. Mar. 25, 2009) (collecting cases), *aff'd*, 360 F. App'x 237 (2d Cir. 2010).

Nor has Cook alleged facts to reflect that he had a serious need for a colonoscopy. "[I]nmates do not have a constitutional right to perfectly on-schedule routine, preventative health screenings." *Gojcaj v. Naqvi*, No. 3:23-CV-01097 (VDO), 2023 WL 7410547, at *4 (D. Conn. Nov. 9, 2023); *Ostroski v. Doe*, No. 3:12-CV-954 RNC, 2012 WL 5448331, at *3 (D. Conn. Nov. 7, 2012) (holding that delay scheduling colonoscopy did not support cognizable deliberate indifference claim).

In addition, Cook refers to his grievances to show the scope of his injuries, but "[a] plaintiff may not rely on exhibits in lieu of alleging facts in the complaint to state a claim against a defendant." *Pires v. Gallagher*, No. 3:24-CV-1168 (SFR), 2025 WL 2053411, at *3 (D. Conn. July 22, 2025); *Rahim v. Barsto*, No. 3:22-CV-619 (MPS), 2022 WL 2704102, at *5 (D. Conn. July 12, 2022) (citing Fed. R. Civ. P. 8 and noting that plaintiff could not rely on exhibits to state deliberate indifference claim).

Even considering the special solicitude owed to pro se litigants, Cook is still required to comply with the Federal Rules of Civil Procedure, including Rule 8. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-77 (2d Cir. 2006) (*per curiam*). Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and it must provide "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and citation omitted). Rule 8 requires a statement for relief to be plain "because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). And, neither a court nor a defendant should be "forced to select the relevant material from a mass of verbiage." *Id.*

I find that Cook's allegations suffice—for initial pleading purposes—to support a claim that he suffered serious conditions related to his difficulty breathing and a failed cervical fusion with related pain. Thus, I will review whether Cook alleges plausible claims Fourteenth and/or Eighth Amendment indifference to his treatment needs for his difficulty breathing and failed cervical fusion and related pain. To the extent he wishes to pursue claims relating to his hernia and colonoscopy, he must file an amended complaint alleging facts that satisfy the objective prong.

### b.    Subjective Prong

The Fourteenth and Eighth Amendments differ with respect to the state of mind—or *mens rea*—required for a plausible constitutional claim of medical indifference.

"[D]eliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a

malicious or callous state of mind." *Charles*, 925 F.3d at 86 (citing *Darnell*, 849 F.3d at 33-34). "[A] detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87 (emphasis in original).

By contrast, for a sentenced plaintiff's claim of medical indifference under the Eighth Amendment, the plaintiff must allege that the "charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

### i.    Dr. Maletz

Cook's allegations against Dr. Maletz concern his treatment needs for his "failed" cervical fusion and related pain while he was both a pretrial detainee and a sentenced individual. *See* Compl. 8 ("Dr. Frank has been my Ortho Dr. since around Dec. 2022"). Cook alleges that his failed cervical fusion has caused him "unending pain," but Dr. Maletz refuses to provide him adequate pain medication or follow-up. *Id.*

For purposes of initial review, I assess that Cook plausibly states Dr. Maletz acted with deliberate indifference to his pain and treatment needs for his failed cervical fusion. Accordingly, I permit Cook to proceed on Fourteenth and/or Eighth Amendment claims against Dr. Maletz in his individual capacity.

### ii.    Dr. Williams

Dr. Williams was Cook's medical provider at Cheshire CI from March 2023 until Cook was transferred to Osborn on May 30, 2025. Compl. 6. I construe Cook's complaint to advance both Eighth and Fourteenth Amendment indifference claims against Dr. Williams.

Cook states that, before he was sentenced, Dr. Williams placed him in quarantine for ten days in February 2024. *Id.* at 6. The Complaint further asserts that Cook was left in his cell even after he "told every nurse that brought meds that I can't breathe" and that the inhalers and medication he was being given were not effective. *Id.* For purposes of initial review I find that Cook has plausibly alleged that Dr. Williams was deliberately indifferent to his medical needs during the period when Cook was held in quarantine in his cell in February 2024. Although thin, the well-pleaded facts support the inference that Dr. Williams ignored or failed to respond adequately to reports that Cook was in acute distress while in quarantine.

The Complaint also states that Dr. Williams unreasonably delayed Cook's requests to see outside specialists. *Id.* But Cook has not alleged any facts to describe when or how Dr. Williams caused the "extreme delays" such that Dr. Williams prevented Cook from timely seeing outside specialists. *See Robinson v. Rodriguez*, No. 3:23-CV-1208 (MPS), 2023 WL 8934837, at *7 (D. Conn. Dec. 27, 2023) ("Because Plaintiff alleges that Phillips and Michelle acted with deliberate indifference in wholly conclusory terms, the court cannot assess whether Plaintiff was subject to an Eighth Amendment violation based on indifference to his serious medical or mental health needs."). Without more specific factual allegations about Dr. Williams's conduct relevant to Cook's medical treatment, I cannot assess whether he acted with Fourteenth or Eighth Amendment indifference by delaying Cook's treatment for his failed cervical fusion.

Accordingly, I permit Cook to proceed on his claim against Dr. Williams only as to the breathing difficulties he experienced in February 2024. If Cook wants to pursue the second claim against Dr. Williams described above—for delays relating to the cervical fusion—Cook must file an Amended Complaint consistent with the instructions below.

### iii.    Dr. Hernandez

Cook asserts that Dr. Hernandez did not provide him with a medical appointment with Dr. Maletz and other medical providers prior to his transfer on May 30, 2025. Compl. 8. Thus, I construe the complaint to advance an Eighth Amendment deliberate indifference claim against Dr. Hernandez.

I conclude that Cook has not alleged plausible Eighth Amendment deliberate indifference by Dr. Hernandez. The Complaint does not suggest Dr. Hernandez was involved with the decision to transfer Cook to Osborn or that she acted in any way to interfere with his ability to see Dr. Maletz or any other provider. The Complaint also fails to support the inference that Dr. Hernandez had the authority or ability to schedule an earlier appointment for Cook to see Dr. Maletz or other providers or that she could have delayed or prevented Cook's transfer to Osborn. *See Warwick v. Doe*, 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (dismissing claim against dental assistant because plaintiff failed to plead "facts suggesting [the dental assistant] actually had and failed to exercise the power" to see a specialist). Accordingly, I will dismiss Cook's Eighth Amendment deliberate indifference claim against Dr. Hernandez in her individual capacity. 28 U.S.C. § 1915A(b)(1).

### iv.    Warden Reis

Cook has not alleged any facts in the body of the complaint to suggest conduct by Warden Reis that violated his constitutional rights. Cook's only allegation relevant to Warden

Reis is that he sent her a communication (specifically "post-exhaustion remedies") that was "passed" on to RCOO Hernandez. Compl. 9.

It is well established that a supervisory official's receipt of a communication, without more, is insufficient to establish the official's personal involvement in a section 1983 constitutional claim. *See Arpin v. Semple*, No. 3:24-CV-1918 (SRU), 2025 WL 1358547, at *4 (D. Conn. May 9, 2025) (collecting cases and dismissing claim against supervisory official to whom prisoner had allegedly sent complaints); *see also McCrary v. Marks*, 836 F. App'x 73, 74 (2d Cir. 2021) (affirming summary judgment in favor of supervisor in First Amendment claim because "the most he has alleged is that [the supervisor] received his letter and directed someone at the TVPA to respond to it. That is clearly not enough to state claim against [the supervisor]").

Absent any factual allegations to reflect that Warden Reis had any personal involvement in any deliberate indifference to Cook's medical needs, I cannot conclude that Cook has stated plausible damages claims under section 1983 against Warden Reis. *See Oh v. Quiros*, No. 3:24-CV-148 (SVN), 2024 WL 896605, at *3 (D. Conn. Mar. 1, 2024) (dismissing claims under section 1983 against Nurse Supervisor absent allegations about her conduct to violate plaintiff's rights); *Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *5 (D. Conn. May 8, 2020) (dismissing all claims against defendants where complaint established no connection between defendants and alleged constitutional violations). Accordingly, Cook has not stated any plausible individual capacity claims for damages against Warden Reiss. 28 U.S.C. § 1915A(b)(1).

### 3. Official Capacity Claims

Cook sues Defendants in their official capacities. To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Cook may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Because Cook is now housed at Osborn, his requests for official capacity relief for constitutional violations by defendants—Dr. Williams, Dr. Hernandez, and Warden Reis who all work at Cheshire —are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (a prisoner's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

However, the Complaint asserts that Dr. Maletz provides orthopedic treatment at Cheshire and the other DOC facilities. Because Cook's allegations suggest he is subject to ongoing Eighth Amendment deliberate indifference to his treatment needs for his failed cervical fusion and related pain, I permit Cook to proceed against Dr. Maletz in his official capacity.

IV.    <u>**CONCLUSION AND ORDERS**</u>

For the foregoing reasons, I conclude as follows:

(1) Cook may proceed on his claims against Dr. Maletz for deliberate indifference in violation of the Fourteenth and/or Eighth Amendments in his individual and official capacities; and on a state law claim of recklessness.

(2) Cook may proceed on his claim against Dr. Williams for deliberate indifference in violation of the Fourteenth and/or Eighth Amendments in his individual capacities; and on a state law claim of recklessness.

(3) Cook's Fourteenth Amendment and/or Eighth Amendment claims against Dr. Hernandez, Warden Reis, and Cheshire Scheduler Doe in their individual and official capacities are DISMISSED without prejudice.

(4) Cook's claims against UConn Medical at Farmington are DISMISSED with prejudice to repleading in any further amended complaint in this action.

(5) Pursuant to Federal Rules of Civil Procedure 20 and 21, Cook's claims against Dr. Vangelder, Warden Martin, Dr. Gibson, UConn Medical Scheduler Doe, and Dr. Perry are severed and dismissed without prejudice to refiling in separate actions.

All other claims, including official capacity claims, are **DISMISSED without prejudice**.

**Cook has two options as to how to proceed in response to this Initial Review Order:**

If Cook wishes to proceed immediately **only** on the claims against Dr. Maletz and Dr. Williams as set forth in paragraph one, he may do so without further delay. If Cook selects this option, he shall file a notice on the docket on or before **March 2, 2026** informing the court that

he elects to proceed with service as to the claims against Dr. Maletz and Dr. Williams as set forth in this paragraph. The court will then begin the effort to serve process in the capacity described above.

Alternatively, if Cook wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint on or before **March 2, 2026**. An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint. The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Cook elects to file an amended complaint, the complaint addressed by this Initial Review Order will **not** proceed to service of process on any defendant.

If the court receives no response from Cook before **March 2, 2026**, the court will presume that Cook wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and he will have to show good cause if he seeks to amend the complaint in any manner in the future.

**<u>Changes of Address</u>**. If Cook changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Cook should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

New Haven, Connecticut
January 28, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge